UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

**BRINK'S CAPITAL LLC,**
a foreign limited liability company,

    Plaintiff,

-v-

**JOE RANDAZZO'S FRUIT AND
VEGETABLE, INC.,**
a Michigan Corporation,

    Defendant.

Case No. 24 - _____ - __

Hon. _____

---

## VERIFIED COMPLAINT

### INTRODUCTION

This is a breach of contract case where the parties entered into a contract with a five (5) year term and then Defendant Joe Randazzo's Fruit and Vegetable, Inc. ("Randazzo's") breached the contract by terminating it after only a few months. Randazzo's is liable to Plaintiff Brink's Capital, LLC ("Brink's") for liquidated damages, which are set by contract.

Randazzo's attempted to create a basis for terminating the contract by making a complaint about Brink's equipment and then blocking Brink's from the location to repair the equipment. Brink's made numerous requests to service the location in the weeks that followed the complaint but was not allowed access each time by Randazzo's. Randazzo's attorney then sent a letter to Brink's after thirty (30) days had passed since the equipment complaint stating that Randazzo's was terminating the contract for cause because Brink's did not repair the equipment issue within thirty (30) days as required by the contract.

Randazzo's cannot manufacture a basis to terminate the contract by sabotaging Brink's efforts to comply with the contract. This Court should not tolerate Randazzo's shenanigans. The

contract is governed by Delaware law, and Randazzo's conduct is a breach of contract as well as a breach of Delaware's implied covenant of good faith and fair dealing.

## PARTIES

1. Brink's Capital, LLC is a Delaware limited liability company with its principal place of business at 1801 Bayberry Court, Ste. 400, Richmond, Virginia 23226.  Brink's Capital LLC's sole member is Brink's Capital Holding Company LLC, a Delaware Limited Liability Company.  Brink's Capital Holding Company LLC's sole member is Brink's Finance Holding Company LLC, a Delaware Limited Liability Company.  Brink's Finance Holding Company LLC's sole member is Brink's Holding Company, a Delaware Corporation that maintains its principal place of business in Delaware.

2. Defendant Joe Randazzo's Fruit and Vegetable, Inc. is a Michigan corporation with its principal place of business in the State of Michigan.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties because (i) Brink's is a citizen of Delaware and Virginia, and (ii) Randazzo's is a citizen of Michigan.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Randazzo's has business locations within this District and Division, including in Wayne County, Michigan.  These are some of the locations where Brink's was providing services pursuant to the contract at issue at the time that Randazzo's breached the contract.

5. Venue is proper in the Eastern District of Michigan, Detroit Division, because a substantial part of the events and/or omissions giving rise to this lawsuit occurred in this judicial district.

## GENERAL ALLEGATIONS

**A.     Brink's**

6.     One of the oldest commercial brands in the world, the Brink's name has been synonymous with security and trust since its founding. Brink's provides and services security related equipment to locations throughout the U.S., including Michigan.

**B.     Defendant**

7.     Defendant Randazzo's has grocery stores and nurseries at various locations in the suburban areas of Detroit, Michigan. Randazzo's sells and advertises to the residents in multiple counties, including Wayne County.

**C.     Brink's and Randazzo's Enter into a Contract for Certain Services**

8.     On or about October 5, 2022, Brink's and Randazzo's entered into a *Brink's Complete* Service Agreement (the "Contract"). The Contract is attached hereto and incorporated herein as Exhibit A.

9.     The Contract has a five (5) year term and required that Brink's provide equipment and services to five (5) Randazzo's locations during that time. Exhibit A, § 2 and Appx. C.

10.     Among other things, the *Brink's Complete* service allows customers to deposit currency and/or coins into a Brink's safe. Customers then receive automated clearing house credits that equal the amount deposited by the customer in near-real time into their bank accounts. Effectively, the service allows customers to convert their cash receipts into ACH credits without waiting for their currency or coin to be picked up and deposited with their financial institutions. To facilitate these transactions, Brink's 24SEVEN online service allows customers to declare the value of amounts deposited into the device via a deposit bag, to monitor their accounts, to order change, and to view detailed reports regarding the financial activity at their locations, among other activities.

11.     In order to provide these services, Brink's must install at least one expensive, proprietary safe at each service location.  Brink's leases most of this equipment, which remains Brink's property until the end of the service agreement.

12.     Brink's incurs other, additional up-front labor and costs when setting up services beyond leasing or procuring and installing its safes.  For example, Brink's must complete extensive "Know Your Customer" procedures before it can begin providing services in order to comply with anti-money laundering regulations.  Other examples of up-font labor and costs associate with implementation including setting up ServiceNow orders, installation schedules, customer training, and setting up 24SEVEN services for the customer.

13.     At the time of contract formation, it can be difficult to predict how much labor and cost Brink's will expend when setting up services for a customer.  For example, some customers require additional Know Your Customer screening that imposes additional onboarding costs.

**D.     Brink's Installs Equipment and Provides Services to Randazzo's**

14.     In or around October and November 2022, Brink's installed safes at five (5) Randazzo's locations.  Each safe had been leased by Brink's and was equipped with specialized equipment installed on it to allow Brink's to provide Randazzo's with the services detailed herein.

15.     For approximately two and a half months, Brink's provided its contracted for services, and Randazzo's paid Brink's according to the Contract.

16.     Randazzo's payments to Brink's were automatically deducted from Randazzo's account.

**E.     Brink's Remedies All but One of the Equipment Complaints Raised by Randazzo's after Randazzo's Suddenly Attempted to Terminate the Contract**

17.     On or about January 5, 2023, Randazzo's sent Brink's a letter wherein Randazzo's stated that it "would like to exercise [its] right of termination of contract under Section 8 (a) page

4" ("Initial Written Notice").  The letter claimed that equipment issues existed at four (4) locations and that the equipment at one (1) location could not be tested because the location was a seasonal location.  The letter appeared to be drafted by an attorney and claimed that Randazzo's "need[s] to terminate the contract with no penalties, no remaining fees, no liquidated damages, and no shipping costs or cost associated with removal and shipping back of equipment."

18. Randazzo's is unable to unilaterally terminate the Contract without first giving Brink's an opportunity to cure any purported equipment or other issues within thirty (30) days of written notice.  Specifically, the Section 8.1(a) of Appendix A of the Contract provides as follows:

> (a) Customer may terminate a particular Equipment Term in the event of a material breach by Brink's of this Agreement with respect to that Equipment; provided such breach continues for a period of thirty (30) days after Brink's receipt of written Notice from Customer specifying the nature of such breach.  If such breach is corrected within such Notice period, then such Equipment Term shall continue in full force and effect.

In fact, Randazzo's is unable to terminate the entire Contract in a scenario where Brink's does not correct an equipment issue at a location within thirty (30) days because each of Randazzo's locations was subject to a separate "Equipment Term" under the Contract.  Contract, § 2.  The Contract further provides:

> (c) Any termination by Customer in accordance with this Section 8.1 shall have no effect on and shall not terminate any other Equipment Term hereunder nor any other existing agreement between Brink's and Customer.

Exhibit A, Appendix A, Section 8.1(c).  Therefore, at most, Randazzo's is only able to terminate a specific Equipment Term (not the entire Contract) in the event of a material breach by Brink's,

provided that the breach continues for a period of thirty (30) days after Brink's receipt of written notice of the purported breach.

19. The Contract contains provisions that set the amount of damages owed should Randazzo's terminate the contract early. Specifically, the Contract provides that, "If [Randazzo's] terminates an Equipment Term within the first thirty (30) months of the applicable Equipment Term, other than for material breach by Brink's, Customer agrees to pay Brink's, as liquidated damages and not as a penalty, the remaining balance of Fees to be paid by Customer during the remaining portion of the applicable Equipment Term." Exhibit A, Appx. A, Section 8.1(b). The Contract contains a lower calculation for liquidated damages if the Contract is terminated after the first (30) months (which is not applicable here). *Id.*

20. The liquidated damages clause is valid. The damages which the parties might reasonably anticipate are difficult to ascertain at the time of contracting because of their indefiniteness and uncertainty. If Brink's must remove its expensive safes and other equipment from a location, it is uncertain whether the equipment will still be usable after removal. In some instances, equipment may require some form of maintenance or repair before it can be redeployed. Assuming a safe can be redeployed, Brink's cannot predict how long it will be required to keep a safe in inventory before that equipment can be reinstalled at a new, paying customer's service location. While that safe remains in inventory for an indefinite period, Brink's continues to incur leasing costs as well as storage costs that it would not have incurred by for the customer's breach of contract. Brink's incurs significant costs and labor upfront on an agreement of this nature via the installation process, onboarding, and other administrative costs. Much of these costs are not typically recouped until well into the Contract term. In light of this uncertainty and the front-loaded nature of many of Brink's expenses, the liquidated damages amount in the Contract is a

reasonable estimate of the damages which would probably be caused by a breach and/or is reasonably proportionate to the damages which have actually been caused by the breach.

21. Brink's treated the Initial Written Notice as a written notice of material breach pursuant to Section 8.1(a) of Appendix A of the Contract (given that such a notice is required to allow Brink's an opportunity to cure before a termination of an Equipment Term can occur).

22. Upon receipt of the Initial Written Notice, Brink's began remedying the issues mentioned by Randazzo's in the letter.

23. On or about Friday, January 13, 2023, Brink's representatives had a call with Cindy Kole, Controller of Randazzo's regarding Brink's action plan to move forward with curing all issues referenced in the Initial Written Notice.

24. On Tuesday, January 17, 2023, Brink's representatives emailed Cindy Kole with Randazzo's to update her regarding certain issues at locations having already been addressed and notifying her that a part needed to be replaced to remedy the equipment issue at the "Outer Drive" location. Brink's pointed out to Ms. Kole that, "Please note that all of this action plan is hinged on the [sic] you all allowing our techs onsite to perform work needed to repair the device."

**F.     Randazzo's, Appearing to Have Counsel Involved, Blocked Brink's From Remedying the Concerns Raised by Randazzo's at One Location**

25. On Wednesday, January 18, 2023, Ms. Kole initially informed Brink's that it was allowed to go to the Outer Drive location to repair the alleged equipment issue at that location. Ms. Kole then followed up by email less than two hours later on the same day and stated, "I just spoke to one of the owners [of Randazzo's], and they asked that you hold off sending a tech out to the Outer Drive store. I will get back to you after our Legal team reviews."

26. On Thursday, January 26, 2023, Brink's personnel again followed up with Ms. Kole to see if Brink's could get access to the Outer Drive location to remedy the alleged equipment

issue. Ms. Kole did not respond for several days. On the afternoon of Monday, January 30, 2023, Ms. Kole advised that she should have an answer for Brink's the following day.

27. Ms. Kole did not follow up with Brink's on Tuesday, January 31, 2023. Therefore, Brink's followed up with Ms. Kole again at the end of the day inquiring regarding the status of whether Brink's can move forward. Ms. Kole did not respond that day.

28. On Wednesday, February 1, 2023, Ms. Kole once again stated that she hoped to have an answer "tomorrow." Ms. Kole again did not follow up with Brink's the next day.

29. On Friday, February 3, 2023, Brink's reminded Ms. Kole via email of Brink's efforts to cure the remaining issue at the Outer Drive location based on Section 8.1(a) of the Contract and informed her the Brink's "wanted to proactively follow up again in good faith" and that Brink's was continuing to wait on Randazzo's to get permission to cure the final issue.

**G.     Randazzo's Counsel Then Claims that Randazzo's is Terminating Because Brink's Did not Remedy Issues at the Location where Randazzo's Blocked Brink's from Remedying the Alleged Issue**

30. On or about February 8, 2023, Anthony Urbani, an attorney for Randazzo's, sent a letter to Brink's stating that Randazzo's now had hired another company and that Randazzo's was terminating the Contract because Brink's failed to repair equipment that is the subject of the Contract.

31. Brink's had communications with counsel for Randazzo's to attempt to resolve the matter.

32. As outlined *supra*, Brink's corrected all issues that were raised in Randazzo's First Written Notice, except for the single issue at the Outer Drive location due to Randazzo's not allowing Brink's access to the location to remedy the final issue.

33. Randazzo's course of conduct of blocking Brink's from addressing the final issue in the Initial Written Notice appears to have been a strategy hatched out by Randazzo's legal

counsel given that Randazzo's advised Brink's in January 2023 that Randazzo's was instructed to not let Brink's access the final location to remedy that last issue and that Randazzo's was waiting on further direction from Randazzo's "Legal team."

34. Regardless, Randazzo's is liable to Brink's for liquidated damages for beaching the Contract when Randazzo's terminated the Contract when it still had approximately 57 months left of the five (5) year agreement.

35. Randazzo's terminated all Equipment Terms under the Contract. The total liquidated damages for Randazzo's early and improper termination is $261,445.65.

36. On April 10, 2023, Brink's sent an invoice to Randazzo's for the $261,445.65, which remains unpaid.

37. On or about August 10, 2023, Randazzo's counsel sent another letter stating that Randazzo's had terminated the contract because Brink's failed to repair equipment that is the subject of the Contract.

38. On December 21, 2023, Brink's outside counsel sent a letter to counsel for Randazzo's outlining how Randazzo's breached the Contract and requesting that Randazzo's pay the liquidated damages in compliance with the Contract.

39. Randazzo's refused to pay the liquidated damages required by the Contract.

## VI.
## Causes of Action

### Breach of Contract

40. All previous paragraphs are incorporated herein as if fully set forth.

41. Brink's and Randazzo's entered into the Contract.

42. Brink's provided Randazzo's with equipment and services pursuant to the Contract.

43. When Randazzo's sent Brink's a written notice regarding purported material breaches of the Contract, Brink's timely remedied the issues complained of at all locations expect for a single Randazzo's location where Randazzo's would not allow Brink's access to cure the alleged equipment issue at that location.

44. Randazzo's then terminated the entire Contract in breach of the express provisions of the Contract.

45. Randazzo's owes Brink's $261,445.65 in liquidated damages pursuant to the express provisions of the Contract.

46. Plaintiff has made a demand on Randazzo's for payment of the outstanding balance, but Randazzo's has failed and refused, and still refuses, to pay the amount due.

## COUNT TWO:
### Breach of Implied Covenant of Good Faith and Fair Dealing

47. All previous paragraphs are incorporated herein as if fully set forth.

48. The Contract is governed by Delaware law.

49. Randazzo's breached the implied covenant of good faith and fair dealing relating to the Contract with Brink's.

50. Under Delaware law, every contract includes an implied covenant of good faith and fair dealing. *E.g., Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482 (Del. 2019); *Dieckman v. Regency GP LP*, 155 A.3d 358 (Del. 2017); *Dunlap v. State Farm Fire & Casualty Co.*, 878 A.2d 434 (Del. 2005). By incorporating provisions of a Delaware-governed contract, the parties to the Contract incorporated this aspect of Delaware law in construing these provisions. This implied covenant reinforces the conclusions above.

51. The Delaware Supreme Court recently summarized how this implied covenant most often works:

> [W]ithout limiting other possible applications, the implied covenant of good faith and fair dealing often comes into play in two situations. [One] is when it is argued that a situation has arisen that was unforeseen by the parties and where the agreement's express terms do not cover what should happen. The other situation . . . is when a party to the contract is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms. The implied covenant is inherent in all contracts and is used to infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. It applies when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. The reasonable expectations of the contracting parties are assessed at the time of contracting.

*Oxbow Carbon & Minerals Holdings*, 202 A.3d at 504 n.93 (internal quotation marks and citations omitted).

52. Effecting the "reasonable expectations of the contracting parties . . . at the time of contracting" requires that Randazzo's not be able to create a basis to terminate all or part of the Contract as Randazzo's has attempted to do in this case. Blocking Brink's from repairing the equipment at the Outer Drive location is impliedly proscribed by the contract's express terms, especially when Randazzo's did so and then had its attorney send a letter stating that the Contract was breached by Brink's for not repairing the equipment that Randazzo's would not let Brink's repair.

53. Randazzo's conduct was in bad faith and for the improper purpose of creating a basis (as it thought) to terminate the Contract.

54. Randazzo's breach of the implied covenant of good faith and fair dealing proximately caused damages to Brink's.

## VII.
## Conditions Precedent

55. All conditions precedent to Brink's claims against Randazzo's have occurred, been performed, satisfied, or otherwise fulfilled.

## VIII.
## Attorney's Fees, Costs and Interest

56. Pursuant to Section 2(c) of Appendix A to the Contract, Randazzo's is required to pay Brink's "collection expenses, including, without limitation, reasonable attorney's fees" plus interest.

## Prayer

WHEREFORE, Brink's Capital, LLC respectfully requests that the Court enter judgment against Joe Randazzo's Fruit and Vegetable, Inc. as follows:

a) Judgment for Brink's and against Randazzo's for liquidated damages pursuant to the Contract;
b) Judgment for Brink's and against Randazzo's for Brink's attorney's fees and court costs;
c) Judgment for Brink's and against Spring Hospital for prejudgment and post-judgment interest; and

d) Award Brink's all further and other relief at law and in equity to which it is entitled.

Respectfully Submitted,

JAY B. SCHREIER, P.C.

/s/ Jay B. Schreier

Jay B. Schreier (P38039)
Attorney for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI  48034
248 820 9159/866 421 8182 fax
Jay@Jayschreierlaw.com

And


**MCFADDEN TRACHTENBERG PLLC**

Randy J. Bruchmiller (pro hac vice to be filed)
Co-Counsel for Plaintiff
4200 Montrose, Suite 300
Houston, Texas 77006
(512) 368-8183 (Telephone)
(832) 442-5430 (Facsimile)
Randy@GreatLaw.com